**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 21-357** |
| | | **CRIMINAL NO. 22-313** |
| **ERNEST PRESSLEY** | **:** | |
| a/k/a "Ern" | | |

## THE GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Justin Ashenfelter, Assistant United States Attorneys for the District, hereby files this sentencing memorandum. Defendant Ernest Pressley is scheduled to be sentenced on May 16, 2023.

## I.    PRELIMINARY STATEMENT

On September 21, 2022, the defendant was convicted by his plea of guilty on a total of five counts contained in both an indictment and an information charging him with one count of conspiracy to commit murder-for-hire and four substantive counts of murder-for-hire arising from his role in the intentional murders of four men in Philadelphia between 2017 and 2018, all in violation of 18 U.S.C. § 1958(a). The defendant's guilty plea agreement also included a stipulation admitting that he was responsible for murdering another man in 2016, aiding and abetting the murder of another man in 2018, and the attempted murder of a woman, also in 2018.

1

By statute, each count of conviction carries a mandatory sentence of life imprisonment. As detailed below, a sentence of life imprisonment is also the guideline range sentence. The defendant is undeniably deserving of such a sentence.

## II.    BACKGROUND

The facts of this case are well known to the Court and were borne out in great detail at the defendant's change of plea hearing in September 2022. In summary, a Philadelphia-based drug trafficker paid sums of money to the defendant to murder K.F., M.R., and S.S. The defendant was cold and calculating in carrying out each murder by sneaking up on the victims and ambushing them with gunfire. In the course of shooting K.F., the defendant shot Person #2, who was sitting nearby, multiple times in his lower body. While stalking K.F. on the night before his murder, the defendant shot and killed E.R., a man who he had selected at random and simply encountered on the street, in an attempt to obfuscate the motive behind the eventual murder of K.F. so it could not be tied back to the drug trafficker. In 2018, the defendant turned down a contract to murder another man at the request of the drug trafficker; however, the defendant eventually provided a tip to the trafficker about where he believed the intended victim was located. A short time later, Y.H. was shot to death near the intended victim's purported location; but Y.H. was not the intended victim and he was senselessly murdered in a case of mistaken identity. Bookending these crimes, the defendant committed other violent acts seemingly on his own accord, to include shooting C.Y. to death on the back porch of his home in 2016 and shooting a woman in her arm as she parked her car in front of her house in 2018.

The defendant was arrested in September 2018 and he later admitted his role in the

2

offense conduct.

## III.   PENALTIES

### A.   <u>Statutory Maximum and Mandatory Minimum Sentences</u>

The Court shall impose the following statutory maximum and mandatory minimum sentence on each of Counts One, Two, and Three in the indictment in Criminal Number 21-357, and each of Counts One and Two in the information in Criminal Number 22-313: death or life imprisonment, five years' supervised release, a fine up to $250,000, and a $100 special assessment.

The total maximum and mandatory minimum sentence is: death or a mandatory minimum term of life imprisonment, five years' supervised release, a $1,250,000 fine, and a $500 special assessment. Full restitution shall be ordered. Forfeiture of all proceeds obtained from the offenses also may be ordered.

The defendant was spared exposure to the death penalty when the government declined to recommend a sentence of death, as outlined in the plea agreement. The surviving family members of the victims concur that a life sentence is appropriate for the defendant in this case.

### B.   <u>Sentencing Guidelines Calculation</u>

A total of eight groups were constructed to capture the offense conduct which included conspiracy to commit murder-for-hire, substantive acts involving murder-for-hire, attempted murder, and aggravated assault. The offense levels and adjustments thereto, as organized in the Presentence Investigation Report ("PSR"), are as follows:

| Count Group | Conduct | Base Offense Level | Adjustments | Total Offense Level |
|---|---|---|---|---|
| I | Crim. No. 21-357: Conspiracy to commit murder-for-hire (Count One); Murder-for-hire (Count Two) – E.R. | 43 PSR ¶ 48 | None | 43 PSR ¶ 53 |
| II | Crim. No. 21-357: Conspiracy to commit murder-for-hire (Count One); Murder-for-hire (Count Three) – K.F. | 43 PSR ¶ 54 | None | 43 PSR ¶ 59 |
| III | Crim. No. 21-357: Attempted murder of Person #2 | 33 PSR ¶ 60 | +2 (serious bodily injury) PSR ¶ 61 | 35 PSR ¶ 65 |
| IV | Crim. No. 22-313: Murder-for-hire – M.R. | 43 PSR ¶ 66 | None | 43 PSR ¶ 71 |
| V | Crim. No. 22-313: Murder-for-hire – S.S. | 43 PSR ¶ 72 | None | 43 PSR ¶ 77 |
| VI | Stipulated conduct – the murder of C.Y. | 43 PSR ¶ 78 | None | 43 PSR ¶ 83 |
| VII | Stipulated conduct – the murder of Y.H. | 43 PSR ¶ 84 | None | 43 PSR ¶ 89 |
| VIII | Stipulated conduct – the aggravated assault of K.C. | 14 PSR ¶ 90 | +5 (firearm discharged) PSR ¶ 91 +5 (serious bodily injury) PSR ¶ 92 | 24 PSR ¶ 96 |

The defendant's greater adjusted offense level is increased by five levels because there are six-and-a-half units applied when the offense conduct is grouped. PSR ¶ 99. Because the defendant accepted responsibility for the offense conduct and timely notified the government and the Court of his intention to plead guilty, his offense level is decreased by three levels. PSR ¶¶ 102-03. The defendant's total offense level is 45, however, the offense level cannot exceed 43 in the sentencing guideline table, so his total adjusted offense level is treated as a 43. PSR ¶ 104.

The defendant has a criminal history score of eight, resulting in a criminal history category of IV. PSR ¶ 112. The defendant's applicable sentencing guideline is life imprisonment. PSR ¶ 174.

## IV.  CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007).  Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a), in determining the appropriate sentence in this case.  The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate

deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).[1]   Restitution is not an issue in this case.

A.    **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The government will direct the Court's attention to the victim impact statements submitted by the victims' families as well as the testimony at the sentencing hearing to provide greater insight into the harms caused by the defendant and the offense conduct.

The defendant was a hitman who killed several people for money. He does not respect human life. In each instance, the defendant stalked his victims, tracked their movements and laid in wait before he snuck up behind them and shot them at close range.

In addition to abruptly ending the lives of his victims, the defendant has forever disrupted the lives of the victims' families and their friends. Countless people's lives were diverted into an

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

atmosphere of despair and ruin when news spread about the death of their loved ones. The little comfort that can be offered to the victims' families is knowing that the defendant will spend the rest of his life in federal prison. While this term of imprisonment serves essentially every purpose of sentencing – incapacitation, punishment, specific and general deterrence, societal exclusion – the defendant's depraved and vile actions will haunt the lives of many for generations to come. He is a stain on Philadelphia and society at large, and never again will he be permitted – or have a hope of being permitted – to menace our community again. Meanwhile, the short lives of his victims and survivors must be remembered and celebrated.

The PSR outlines the defendant's personal characteristics including his upbringing, family life, work history, prior criminal convictions and arrests. Plainly, it is all very sad. But, however traumatic the circumstances that led up to the offense conduct, it pales in comparison to the havoc the defendant caused to the lives of his victims and their families.

The Court's ultimate sentence should reflect the seriousness of these crimes and his conduct. Accordingly, both the statutory mandatory minimum and guideline sentence of life imprisonment is appropriate and warranted.

B.    **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

Congress has established that a life sentence for murder-for-hire crimes is appropriate. The government agrees. Such a sentence serves to underscore the seriousness of the offense while promoting respect for the law and just punishment. It is the only sentence that serves every conceivable purpose of sentencing in this case.

7

**C.      The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

A life sentence will protect the public and prevent the defendant from committing further crimes in society. The defendant's conduct speaks for itself – it was horrendous and harmful. The defendant's conduct has earned him a life sentence; there is no other appropriate sentence.

**D.      The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no known need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). The defendant will have ample opportunity to further his training, education, care or treatment, should he desire to, through the various educational opportunities provided to inmates within the Bureau of Prisons.

**E.      The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Congress has established that a life sentence for murder-for-hire crimes is appropriate. The Sentencing Guidelines are in accord with Congress' mandate. The government is not aware of any policy statements that are of particular concern in this case. Indeed, the interest of public policy is directly furthered by imposing a life sentence for a defendant who murdered six people and attempted to murder two others. Considering the defendant's history, characteristics, role in the offense conduct, and the other sentencing considerations discussed above, a life sentence is appropriate.

## V.    RESTITUTION

Restitution must be ordered to the victims' families. The government will submit a restitution schedule in advance of the sentencing hearing.

## VI.    CONCLUSION

Based on the foregoing, the defendant's conduct requires that he be incapacitated for the rest of his natural life. A statutorily required sentence of life imprisonment, which is also the calculated guideline sentence, for these crimes will serve all of the purposes of sentencing and all of the factors set forth in § 3553(a). Accordingly, the government requests that the Court impose five consecutive life sentences, one for each count charged in both the indictment and the information.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Government's Sentencing Memorandum has

been served by Electronic Case Filing on counsel for the defendant:

Karl D. Schwartz, Esq.
Schwartz@wisemanschwartz.com

*/s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney


Date: May 1, 2023