# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case Nos. 2:21-cr-00357-ER-1 |
| | ) | 2:22-cr-00313-ER-1 |
| Plaintiff, | ) | |
| | ) | Courtroom 15A |
| v. | ) | U.S. Courthouse |
| | ) | 601 Market Street |
| ERNEST PRESSLEY | ) | Philadelphia, PA 19106 |
| *also known as "ERN"*, | ) | |
| | ) | May 16, 2023 |
| Defendant. | ) | 10:14 a.m. |

TRANSCRIPT OF SENTENCING HEARING
BEFORE HONORABLE EDUARDO C. ROBRENO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the United States
of America:

United States Attorney's Office
By:  JUSTIN T. ASHENFELTER, ESQ.
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

For the Defendant:

Wiseman & Schwartz, LLP
By:  KARL DAVID SCHWARTZ, ESQ.
718 Arch Street, Suite 702N
Philadelphia, PA 19106

ESR:

Kenneth Duvak

Deputy Clerk:

Ronald Vance

TRANSCRIPTION SERVICE:

TRANSCRIPTS PLUS, INC.
435 Riverview Circle
New Hope, Pennsylvania 18938
Telephone:  215-862-1115
e-mail CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

INDEX

                                                              PAGE

Statement by Conchetta Small                                    7

Statement by Marie Fruster                                     10

Statement by Khayyan Fruster, Sr.                             12

Statement by Leslie Branford                                  14

THE COURT:  Good morning; please be seated.

We are here today to sentence the defendant, Ernest Pressley.  The defendant pleaded guilty to one count of conspiracy to commit murder-for-hire.  Counts 2 and 3 of use of interstate commerce facilities in the commission of a murder-for-hire, those were in case 21-357.  In case 22-313, he pleaded guilty to Counts 1 and 2 of the use of interstate commerce facility in the commission of a murder-for-hire, and aiding and abetting in those murders.

In connection with the sentencing, I have reviewed the presentence investigation report and the recommendation prepared by the Probation Office; the guilty plea agreement between the defendant and the Government; the Government's sentencing memorandum; the defendant's sentencing memorandum; and the victims' impact statements, including one that was delivered to the Court this morning.

Would the deputy swear the defendant?

THE CLERK:  Please stand and raise your right hand.

ERNEST PRESSLEY, DEFENDANT, SWORN

THE CLERK:  Please state your name for the record.

MR. PRESSLEY:  Ernest Pressley.

THE COURT:  Please be seated, Mr. Pressley.

The Court will proceed as follows:  First, I will calculate the recommended sentence under the guidelines.  Then I will rule on any motions for departure.  Then I will consider

4

the factors under Section 3553(a).  And finally, I will impose a proposed sentence which is sufficient but not greater than necessary to comply with the elements of section 3353(a) [sic].

So we'll begin with the sentencing guidelines.  Mr. Schwartz, did you and the defendant review the presentence investigation report?

MR. SCHWARTZ:  Yes, Your Honor, we did.

THE COURT:  And are there any objections that you wish to argue today?

MR. SCHWARTZ:  No, Your Honor.

THE COURT:  Thank you.

On behalf of the Government, Mr. Ashenfelter, did you review the presentence investigation report?

MR. ASHENFELTER:  I have, Your Honor.

THE COURT:  And are there any objections that you wish to argue today?

MR. ASHENFELTER:  No, not from the Government; thank you.

THE COURT:  There being no objections to the presentence investigation report, the Court will adopt the recommended findings of facts of the presentence investigation report as the findings of facts of the Court for purposes of this sentencing.

Based on those findings of facts, I will now state my conclusion as to the appropriate level criminal history

5

category and sentencing guideline range in this case.  The total offense level is 45, which is then converted to a 43. Criminal history category is 4.

Therefore, under the guidelines, the defendant is recommended to be sentenced to a period of life imprisonment. The defendant is not eligible for probation.

A period of supervised release of two to five years in the event that the defendant is released prior to the expiration of the life imprisonment sentence.

A fine between 50,000 and $500,000 provided the defendant has an ability to pay a fine.

Restitution is not implicated in this case.

And a special assessment of $500 is mandatory.

We'll proceed now to consider any motions for departure.  Mr. Ashenfelter, are there any motions for departure from the Government?

MR. ASHENFELTER:  No, Your Honor.

THE COURT:  Mr. Schwartz, any motions for departure from the defendant?

MR. SCHWARTZ:  No, Your Honor.  However, in regard to this factor and the subsequent factor, if we could see the Court briefly at sidebar, at your convenience.

THE COURT:  Please, see me at sidebar.

MR. SCHWARTZ:  Thank you.

(Off-the-record sidebar 10:19:54 a.m. to 10:20:42 a.m.)

6

THE COURT:  End of sidebar.

We'll proceed now to consider the factors under the Section 3553(a) and any requests for variances.  Counsel may offer argument, and may call upon any witnesses whom counsel wishes to have the Court hear them today.

So, Mr. Schwartz, you may begin.

MR. SCHWARTZ:  I have nothing to offer in this respect, Your Honor.

THE COURT:  Do you want to offer any argument?

MR. SCHWARTZ:  Oh, sure.

THE COURT:  Okay.

MR. SCHWARTZ:  I -- I'm sorry, I didn't realize the chronology.

Your Honor, I submitted a sentencing memorandum.  I would largely rest on that memorandum.  I think it details the relevant background, and may help to explain, if an explanation is even possible, as to how we got to where we are.

Mr. Pressley, as well as the defense, expresses our condolences and regret for these acts, and I think he has taken the first step towards -- first small step towards rehabilitation by his admissions in these cases.

THE COURT:  Thank you, Mr. Schwartz.

Mr. Ashenfelter, argument, any witnesses or statements by victims at this time.

MR. ASHENFELTER:  Yes, Your Honor.  If you'll notice

7

in the audience, there are several people.  We're joined by members of -- the victim's family is here today.  There will be represented from the  Fruster family, the Robinson family, the Hopkins family, the Young family, and the Small family, as well as the Riley (phonetic) family.

That being said, Your Honor, there have been three victim impact statements that were submitted in advance of today's hearing.  I believe that the folks who submitted those statements will rely on those.  However, the Government would supplement with at least one witness who would like to address the Court.  There may be more, but I'll just double-check.

Ms. Small?

MS. SMALL:  Yup.

MR. ASHENFELTER:  Yes.  Your Honor, the Government first calls Conchetta Small.  She's the sister of Shawn Small.

THE COURT:  Okay.  Please come forward.

MS. SMALL:  I want to look at you so bad.

THE COURT:  Please.  Please.  Swear the witness, please.

THE CLERK:  Please raise your right hand.

CONCHETTA SMALL, SWORN

THE CLERK:  Please state your name again for the record.

MS. SMALL:  Conchetta Small.

THE COURT:  Please proceed.

8

MS. SMALL:  So, in a moment, I'm going to have the courage to turn around and look at you.  But I don't want you to see my brokenness right now because I'm standing up here with the courage of my brother and you knew him.  I don't think y'all like each other, but you knew him.

So, first, I want to say that so many of our young brothers and sisters are murdered and they're not soft.  I thank God that the men and women that brought you here today did.  I wish it was five lives sooner, but I'm glad you were caught.

Bo and P.R. (phonetic) was at my mother's funeral.  They embraced our family.  They saw our love.  They saw what Shawn meant to us.  Going to -- and I'm all over the place because everything is in here, so it's not going to come out in order.

So, when I went to Bo's hearing, and I watched that tape with you on it, and I seen that you questioned him at least two times for two murders, "Are you sure you want me to do this?"  I heard you say that on the tape.  And they gave you an answer.  You don't want to look at me, bro.  They gave you an answer.  Were you sure you wanted to do it?  Were you sure that you was willing to let your sister be whatever she is, because you was doing it for rent money, right?  The money you never got?  So who's taking care of your sister now?  You understand what I'm saying?

9

Normally, I'm God-fearing. And I wish that you would spend the rest of your life in jail, but people come conditioned to where they're living. And you'll learn to adjust to jail. And you'll be there. You'll embrace it. I hope they kill you. I hope you lose your life there. I hope your sister get to feel just like I do. You took something so important away from our family. I got four brothers, but there's only one Shorty. And I know he wasn't no saint (indiscernible), but nor were you a judge.

And now, one of the niggas is on the street, they going to get it. Time will tell. You know, you live by the sword, you die by the sword. But I just want you to know that I hope nothing good comes your way. With all my heart, I hope nothing good comes your way.

And maybe one day I'll forgive. Maybe one day I'll step up in church and the preacher will move my spirit. And I'll be able to say, Father God, I forgive Mr. Pressley, Mr. Ernest Pressley for what he did to my brother, those babies, those tow truck drivers, all them people you hurt. Right? Where were you? What happened in your life that was so horrible that you had no value for life?

Even now, even though I want you dead, I don't think I could do it. I don't think it could be me that do it. But I know there's somebody up in that Federal prison that can. And I pray to God that they get you.

10

THE COURT:  Thank you, Ms. Small.

Argument?  We

MR. ASHENFELTER:  We have another witness, Your Honor.

THE COURT:  Okay.

MR. ASHENFELTER:  Ms. Marie Fruster.  She's the grandmother of Khayyan Fruster, Your Honor.

THE COURT:  Okay.  Please swear the witness.

THE CLERK:  Please raise your right hand.

MARIE FRUSTER, SWORN

THE CLERK:  State your name, please.

MS. FRUSTER:  Marie Fruster.

I didn't witness the actual crime, but I witnessed the aftermath.  I looked into my grandson's eyes as they took him into the hospital, and he just looked at me for the last time and said, "Grandma, please."

Well, you made several deals with the Government. You were able to make deals.  Not fair.  I don't know what this Government is, and as long as people like you who can make deals, there will still be carnage in the streets.  And I don't know why these officials don't understand that.  Because it's people like you that give the other children the right to go out and murder.  I won't be the last to stand here.  I won't be the last grandmother.  I won't be the last mother.

I had several grandchildren.  But you took the one

11

from me that was there from the beginning. When I went to his birth, the nurses said, oh, no, it's not your grandson because the difference of our color. And when I ran down that street, to Hegerman, one of the neighbors said, oh, don't worry, honey, it's not your grandson. Well, it is. He always will be my grandson.

I don't wish you any harm. I just wish, in the Lord's name, that your grave is small. I just wish in the Lord's name, that your grave is covered with cement. And I'm sorry to say that. I don't embrace Islam, but I see that you do. And why in the name of Jesus, God, Allah, whomever, that the Government allow you to make these deals, why did they take the death penalty off the table? You didn't give our victims the -- an opportunity. And for $10,000?

Then the night before, you kill somebody because that other idiot told you, oh, make it look like a tow truck war. I don't understand it. I never will. And I don't have to. If you stood on your tiptoes, you couldn't touch the belly of a snake.

I wish you nothing. I wish you nothing. Go to Federal penitentiary. I'll try to make connections.

THE COURT: Thank you, Ms. Fruster.

Any other witnesses?

MR. ASHENFELTER: One moment, Your Honor. I saw there were some people who came in before we started. Does

12

anybody else want to say something?  Does anyone want to address the Court?  Mr. Fruster?

MR. FRUSTER:  Khayyan Fruster.

THE COURT:  Are they connected to the victims?

MR. ASHENFELTER:  Yes, Your Honor.

THE COURT:  Okay.  Please swear the witness.

THE CLERK:  Please raise your right hand.

KHAYYAN FRUSTER, SWORN

THE CLERK:  Please state your name again for the record.

MR. FRUSTER:  Khayyan Fruster, Senior.

THE COURT:  Your relationship, sir?

MR. FRUSTER:  Father of Khayyan Fruster, Junior.

THE COURT:  Okay.

MR. FRUSTER:  First and foremost brother, I forgive you.  I had to dig deep inside myself to forgive you and move on today.

Your tore our lives apart, and many other lives with what you did.  It's so hard for me to forgive.  You took such a great precious person from me.  I just ask you during your time in the penitentiary, man, give back to the youngens, man. Try to teach them what not to do, man.  I was once in the streets, man, and that's all I do is try to give back to the youngens, man, what I tried not to do, man.  It's so hard for me to sit here and look in your eyes.  It is, it's very hard.  But I'm a

13

better person than that. I am. I'm a way better person today.

You hurt man families here, man. You took my first born. Not only did you hurt our families, you hurt your family, as well. I'm humble today. There's a lot more inside me I wanted to say, but I'm going to leave it at that.

Thank you, Your Honor.

THE COURT: Thank you, sir, for coming in.

Anyone else? Please swear the witness.

THE CLERK: Please raise your right hand.

LESLIE BRANFORD, SWORN

MS. BRANFORD: Leslie Blanford (phonetic).

THE COURT: Please proceed.

MS. BRANFORD: Good morning, Your Honor.

THE COURT: Good morning. Please tell us your relationship.

MS. BRANFORD: Yasir Hopkins is my cousin. My -- as well as my brother (indiscernible).

So, of course, you may know what Salaams mean, you know. Peace. Blessings. Mercy. And deraka (phonetic), you know? I don't -- I really don't know, and I'm trying to find -- I'm -- like, this is just -- just coming back to me because I also have a history of gun violence. You could actually be the man that shot me. I got shot over 20 years ago. Still having so much hell from that. My father was murdered the next year. And I just lost my brother again, one -- 2019, and now I'm back

14

in here for my cousin. And this -- this really hurts me because God says that the men are the maintainers and the protectors of the women. You in here, who's going to be out there with your sister? What about your mom? What about your children? My mom done lost her son. Ms. Justice has lost her son. Yasir was part of her. Her -- to be her protector.

And y'all, in there, do math. My 15-year-old didn't want to come back here. He done imprisoned himself in his own home. The mother is now separated from her home. To the point that I don't even know what a man in my life. Don't know the man that shot me. The man that suspect that probably killed my father said, what would you do if you find out who killed your father? I said, I don't know, but why would I tell him? I'm going to let -- I'm going to let the law deal with it. The law going to deal with it.

And it's -- it's bull -- I'm trying my best to be an advocate for gun violence because I'm tired of it. And it hurt every time I hear about it from anybody's family. From anybody's family. They's, like, I can't see how you do it. You come home 2 o'clock in the morning from work. How you just walk around with nothing? No weapon formed against me shall prosper. I'm telling you. That -- that prayer. When I piss, I don't miss. I'm going to pray my way out of it. I'm going to pray my way out of it. What are you going to do for us out here when some trouble comes through our door? Someone who

15

want to -- wants to look at your little son, like, you're not a grown man.  These boys out here ain't got no hope.  And you hear, and they'll tell you, I ain't got it all.  What are we going to do?  What are we going to do?  What are you going to do when you're in there?  What are you going to do?  These boys walking around freaking hundred-degree weather in freaking hoodies and stuff like -- looking like a whole freaking licorice stick.  Nigga, you sick.  Stupid.  And then y'all got to be -- y'all -- follow leaders.  How you going to lead me?  Somebody shot me.  I don't know who to do.  I'm not sleeping with the -- I don't know who did it.  I don't know the person that killed my father.  Even my brother.  It's just like, I don't want no smoke.  Come on, man.  We know what that mean on the street.  Like, that's a way to pleading for their life.  And he was trying to break it up.

Lord knows what happened with this whole situation with Yasir, but it's just like, I don't know.  Like, a life for a life.  We can go into -- we can go into the Bible.  Is anybody reading anymore?  I'm hurt.  My -- the men are supposed to maintain and protect me with their unconditional love, they not here no more.  And I just lost my mom.  I don't nobody (indiscernible) and my boy.  Y'all going to try and take him from me, too?

Who do you want to talk to when you get in there to stop this crap?  Like, I'm tired.  I'm tired of it.  So many of

16

us is tired of it.  We're tired of it.  These kids is wild 'n out.  They wild 'n out.  Now you -- you long distance.  The same -- the same one -- I just came out of court for the same stuff.  Like, is it fair to your family?  What about you?  You up in there, do you not think that you can't see -- you took -- you not only took somebody else son over here, you took yourself away from your family.  You took it away from your family.  Like we don't need y'all.  We need our men to protect us from harm.

I don't know -- I don't -- I don't know.  This is just such a repetitive state I can't, like, trust y'all.  No, I'm going to trust the law.  I'm going to trust the law.  Y'all going to -- that retribution.  I don't want to eat off that money.  I don't want it.  I don't want no bills of it.  I don't need to (indiscernible).  Believe me, I'm eating good.

THE COURT:  Thank you, ma'am.

MS. BRANFORD:  Thank you.

THE COURT:  Thank you, ma'am, for coming in.

Anything else?

MR. ASHENFELTER:  I think that's all, Your Honor.

THE COURT:  Argument, do you have any?

MR. ASHENFELTER:  Very briefly, Your Honor.

You just heard from a number of family members of the victims in this case.  As far as the Government is concerned, this process by the way of our presentation is really about

17

them.

I submitted a Government sentencing memorandum from the Court.  The law requires that the defendant receive a life sentence, a mandatory life sentence.  The Government is asking that the Court impose five consecutive life sentences, one for each count of conviction in the indictment and the information.

The defendant's conduct speaks to itself.  It was cold.  It was cowardly.  It was absolutely reprehensible.  He destroyed not only the lives of his victims directly, but the lives of the people and the audience who have spoken and who have not spoken.

The Government is of a position that five consecutive life sentences is appropriate in this case.  Not only for the defendant, but for the families and for society at large, to recognize that prison is built for a person like Ernest Pressley.  He deserves to be there five times over.

Thank you, Your Honor.

THE COURT:  Before we afford, Mr. Pressley, an opportunity to speak to the Court, if he wants to, Mr. Schwartz, is there anything further from you?

MR. SCHWARTZ:  Other than penitentiary recommendation that the Commonwealth does not object to, nothing, Your Honor.

THE COURT:  Thank you.

Mr. Pressley, you now have an opportunity to speak to the Court if he wants to.  You don't have to say anything, but

18

if you do, now is the opportunity to say so.

(Pause/No audible response heard)

THE COURT:  I take silence as declination.  Mr. Pressley, will you please stand and tell me what's on your mind of anything?

MR. PRESSLEY:  I'm not a great (indiscernible), so I don't have words to captivate people.  I'm not going to place blame on anyone but myself for my actions.

I, like most of the people that's in this room, have lived through great adversities, some more than others.  Mine is no greater than theirs.  I don't claim to know how they feel.  I know that I caused them great pain.  And I can only ask for forgiveness and the sorrow.  That's all.

THE COURT:  Thank you, Mr. Pressley.

I will now state the justification for the sentence and the proposed sentence.  The defendant stands before the Court to be sentenced on conspiracy to commit murder-for-hire and furor counts of use of interstate commerce facilities in the commission of murder-for-hire.

Under the sentencing guidelines, he's also held accountable for two additional murders and one attempted murder.

The defendant was a hitman, a contract killer, who murdered civilians in 2017 and 2018 in and around the Philadelphia area.  The murders were calculated, they were

19

well-planned, and they were committed for profit.

Prior to the instant offense, the defendant had a significant criminal history.  He had a juvenile criminal history.  His adult history consisted of three convictions for robbery, driving under the influence of alcohol and drugs, possession of a firearm, and moreover, the defendant was on parole and probation when he committed the instant offenses.

It is true that the defendant's personal background and hardship provide some insight as to how he became a contract killer.  Nevertheless, his personal history in no way can justify or mitigate the magnitude of the crimes the defendant has committed.

The instant offenses were deplorable, and a sentence of imprisonment is mandatory.  Per the agreement, the Government agreed not to seek the death penalty.  So a sentence of life imprisonment, considering the seriousness of the offense, the history and characteristic of the defendant, it is a just punishment for the offenses.

It also will promote respect for the law, and the consecutive life sentence will protect the community from future crimes by the defendant.  And we trust it will provide some deterrence for future criminal conduct by the defendant and others in the community.

Should the defendant be released prior to the termination of these sentences, the five-year period of

20

supervised release will be imposed.  The extensive period of supervised release, in the event that that ever comes about, will provide the community through the efforts of the Probation Office with supervision of the defendant.

A fine of $2,500 will be imposed, as well, and that will qualify the defendant for employment while he is incarcerated.  The obligation to pay the fine is due immediately.

The defendant shall participate in the Bureau of Prisons Inmate Financial Responsibility Program so that he may generate income to pay the fine.  If he is ever released prior to the termination of his sentence, he shall pay $25 while on supervised release on a monthly basis.

The special assessment of $500 is mandatory.  In light of the fine and the special assessment, the defendant will not -- in light of the special assessment, the defendant will not be required to pay the fine within the guideline range, and it is so ordered.

This is my proposed sentence, which will be five consecutive life terms, as aforesaid.

Is there any reason why the imposition of this sentence would be unlawful?  Government counsel?

MR. ASHENFELTER:  The government does not know of any reason, Your Honor.

MR. SCHWARTZ:  May I have just one second, Your

21

Honor?

THE COURT:  Yes.

(Pause)

MR. SCHWARTZ:  No, Your Honor.  If I -- however, if I may just apologize, I referred to the Federal Government as the Commonwealth.  That was obviously an error.

Additional -- additionally, I would remind of Court of the -- of our request for --

THE COURT:  We will --

MR. SCHWARTZ:  Thank you.

THE COURT:   We will attend to the request after the sentence is imposed.

MR. SCHWARTZ:  Thank you.

THE COURT:  Mr. Pressley, would you please stand? Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Ernest Pressley, is hereby committed to the custody of the Bureau of Prisoners to be imprisoned for a term of life imprisonment on each of Counts 1, 2, and 3 in Docket 21-357-001, and Counts 1 and 2 of Docket 22-313-001, all such term are to run consecutive.

If he's ever released from imprisonment, the defendant shall be placed on supervised release for a term of five years on each of Counts 1, 2, and 3 of Docket 21-357-001, and Counts 1 and 2 of Docket 22-313-001, all such are terms to be served at concurrently.

22

Within 72 hours of release from the Bureau of Prisoners, the defendant shall report in person to the probation office in the district to which the defendant is released.  If he's ever released, the defendant shall participate in a mental health program for evaluation and/or treatment, and abide by the rules of any such program until he's satisfactorily discharged.  And the defendant shall refrain from illegal possession and/or use of drugs, and shall submit to urinalysis of other forms of testing to ensure compliance.

It is further ordered that the defendant shall participate in drug treatment and abide by the rules of any such program until he's satisfactorily discharged.

It is further ordered the defendant shall pay to the United States a fine of $2,500.

The defendant shall notify the United States Attorney for the District if he's ever released within 30 days of any change of mailing address or residence that occurs while a portion of the fine remains unpaid.  The fine is due immediately, and it is recommended that the defendant participate in the Bureau of Prisoners Financial Responsibility Program, and provide minimum payment of $25 per quarter towards the amount of the fine.

In the event the fine is not paid prior to the commencement of supervision, the defendant shall satisfy that

in monthly installment of not less than $50 to commence 30 days after release from the confinement.

It is further ordered that the defendant shall pay to the United States a special assessment of $500, which is due immediately, and it is so ordered.

Now, was there a waiver of appellate rights in the case?

MR. ASHENFELTER:  There was, Your Honor.

THE COURT:  Mr. Pressley, you waived your right to appeal your sentence.  However, you may appeal your sentence if you qualified under one of the following exceptions:  If the government appeals your sentence; if your sentence exceeds the statutory maximum; if the sentence imposed depart upward pursuant to the sentencing guidelines; or if the sentence imposed was above the sentencing guideline range.

It does not appear that you qualify, but you should discuss the matter with your counsel.

Additionally, when you pled guilty, you limited your right to collateral attack the sentence, except that you may file a petition under Section 2255, raising a claim of constitutional ineffective assistance of counsel.

For an appeal to be effected, you must file a notice of appeal with the Clerk of the Court not later than 14 days from the date the judgment is entered.  Failure to file a notice of appeal will result in your losing your right to

24

appeal.

In addition, you are hereby advised that have the right to be represented by counsel in the appeal.  And if you are financially unable to hire private counsel, the Court will appoint counsel to handle the appeal.

The original of the presentence investigation report and the recommendation of the Probation Office shall be returned to the Probation Office, and the recommendation shall not be released without further order of the Court.

So, there is a request.  Mr. Schwartz, do you want to address that for the Court to recommend to the Bureau of Prisons -- and you may be seated, Mr. Pressley -- to the Bureau of Prisons a particular designation?

MR. SCHWARTZ:  Yes, Your Honor.  And I did discuss this with the Government; they had no objection.  There are two -- these are not particularly -- otherwise particularly desirable facilities.  They're United States penitentiaries, they're Coleman 1 and Coleman 2.  The value is twofold:  One is that it removes Mr. Pressley from this area, which based on information that I related to the Court at sidebar, I think it would be appropriate.  And to the extent -- well, I mean, rehabilitation and redemption for Mr. Pressley, like anyone, is a legitimate consideration.  There is extended family in that area, and that -- to be transparent with the Court, that is a basis for the request, as well.

THE COURT:  Thank you.  Any -- what's the Government's position.

MR. ASHENFELTER:  No objection, Your Honor.

THE COURT:  The recommendation will be adopted by the Court, and the Court will recommend to the Bureau of Prisons, who has full discretion as to the designation of inmates, that he be designated to the Coleman 1 or USP Coleman 2 in Florida. The Government has no objection to the request.  The request is predicated on the value of having Mr. Presley removed from the Philadelphia area where these crimes were admitted, and that he would have access to his family in the Coleman facilities.

Anything else from Government today?

MR. ASHENFELTER:  Not from the Government; thank you, Your Honor.

THE COURT:  Anything from the defendant?

MR. SCHWARTZ:  No, Your Honor; thank you.

THE COURT:  Okay.  Defendant is remanded to commending serving his prison term.

The hearing adjourned.  Thank you.

(Whereupon, at 10:55 a.m., the hearing was adjourned.)

26

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Karen Hartmann*

Karen Hartmann, AAERT CET 475  Date:  September 20, 2023
TRANSCRIPTS PLUS, INC.